FILED

2026 May-18  AM 11:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DERRICK WHITE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-128-GMB |
| | ) | |
| PRO TRANSPORT SAVANNAH, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Derrick White, Kathya White, and Breanna White filed a complaint

against Rex Collier and his employer, Pro Transport Savannah, Inc.,[1] after a collision

between Collier's tractor trailer and the Whites' vehicle. Doc. 1-1 at 2–14.  Before

the court is the Motion for Summary Judgment filed by Pro Transport and Collier.

Doc. 34.  The motion has been fully briefed (Docs. 3 & 36–39) and is ripe for

decision.  For the following reasons, the motion for summary judgment is due to be

granted in part and denied in part.

### I.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no

---

[1] The complaint also states an uninsured/underinsured motorist claim against Allstate Insurance
Company. Doc. 1-1 at 12–13.  Allstate opted out of all proceedings in this action consistent with
*Lowe v. Nationwide*, 521 So. 2d 1309 (Ala. 1998). Docs. 9 & 18.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence is "merely colorable, or

2

is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). On the other hand, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## II.  RELEVANT UNDISPUTED FACTS

Pro Transport hired Collier as an independent contractor in March 2024. *See* Doc. 34-1 at 267–72. When he applied for the position, Collier held a valid

commercial driver's license and had more than 30 years of experience driving a tractor trailer. *See* Doc. 34-1 at 265, 272, 274–75.  In the three years before his application, Collier reported that he had not been in any motor vehicle accidents and had one uncontested traffic citation for a "lane violation" because he drove in a lane that prohibited trucks with more than six wheels. Doc. 34-1 at 137 & 268.  Before hiring Collier, Pro Transport obtained motor vehicle records from two sources and confirmed that he had a valid commercial driver's license, had no accidents in the last three years, and had only one traffic citation in the last three years. Doc. 34-1 at 274–276, 278.  After his hire, Pro Transport required Collier to complete additional safety training. Doc. 34-1 at 281–98.

Pro Transport's driver's safety rules prohibit drivers from "engag[ing] in distracting activities while driving.  This includes using a cell phone for talking or texting . . . ." Doc. 38-9 at 3.  Likewise, the cell phone policy requires drivers to "[f]ind a safe place to pull off of the roadway [to] place a call" and mandates that a driver should "let the call go to the voicemail, and answer when safe" if he receives a call while driving. Doc. 38-10 at 2.  "Alternatively, Pro-Transport will permit drivers using hands-free telephones to accept calls while driving" so long as they "find a safe place to pull off the roadway to place calls." Doc. 38-10 at 2.

## A.    The Collision

On August 14, 2024, Collier went on duty at 5:45 p.m. Eastern Standard Time

4

in Savannah, Georgia and began driving a Pro Transport tractor trailer toward Birmingham, Alabama ten minutes later. Doc. 38-7 at 7. Before arriving in Birmingham, Collier stopped for fuel in Moody, Alabama at 11:15 p.m. Doc. 38-7 at 8. During the drive From Savannah to Moody, Collier called his wife twice for a total of seven minutes and another individual six times for a total of 209 minutes. Doc. 38-8 at 3. He also received six calls during the same time for a total of 152 minutes. Doc. 38-8 at 3. Collier was not using the phone immediately before or at the time of the accident. Doc. 38-8 at 3; Doc. 34-1 at 144.

Late the same night, Derrick White drove his Lexus IS 250 sedan westbound on Interstate 20/59 in Birmingham. Doc. 34-1 at 44. His wife Kathya and daughter Breanna were passengers in the car. Doc. 34-1 at 44. Kathya was sitting in the front passenger's seat, while Breanna was in the back seat. Doc. 34-1 at 44. Derrick planned to take Exit 124C onto Interstate 65 toward his home in Hartselle, Alabama. Doc. 34-1 at 44. He was driving in the far right-hand lane, which was an exit-only lane toward I-65. Doc. 34-1 at 44–46, 52.

At the same time, Collier was driving westbound on Interstate 20/59 in the tractor trailer. Doc. 34-1 at 143. Collier was in the second to right-hand lane, which allowed him to remain straight and continue on I-20/59 or to take Exit 124C onto I-65. Doc. 34-1 at 45, 52. This lane was located to the immediate left of the Whites' lane. For clarity, the rest of this Memorandum Opinion will describe the Whites'

lane as "Lane 1" and Collier's lane as "Lane 2" based on their orientation to the outside of the roadway.  Collier intended to bear right in order to take Exit 124C onto I-65. Doc. 34-1 at 155.  Collier's tractor had a dashcam recorder that captured still images before, during, and after the collision.[2] *See* Doc. 37.

The two vehicles came into contact right before they reached Exit 124C.  The collision caused the Whites' sedan to cross over into Lane 2 and rotate counter-clockwise in front of Collier's tractor trailer. Doc. 37 at 0:31–32.  Derrick White testified in his deposition that Collier caused the collision by encroaching on his lane. Doc. 34-1 at 44 & 51.  Similarly, Kathya White testified that she saw Collier "coming in on" them (Doc. 34-1 at 232), and Hasheem Clark, who was driving behind the Whites, testified that "the truck came over and hit them." Doc. 38-4 at 6.  Breanna White testified that she heard her mother "yell[]: He is coming in on us," and then she "look[ed] towards the truck to [their] left" and heard her "dad say: Hold on, girls.  And then as quick as it all happened, that is when I saw—I watched and felt the impact into my door from the truck." Doc. 34-1 at 101.  Collier maintains, however, that the Whites caused the collision when their car entered his lane and struck his right front tractor tire. Doc. 34-1 at 143, 189 & 225.

---

[2] The footage is a series of frames captured each second, not a continuous video stream.

## B.    Powers' Investigation and Opinions

Pro Transport and Collier retained Allen Powers, P.E. to investigate, perform measurements, and reconstruct the accident. Doc. 34-1 at 205–14.   During his investigation, Powers watched the dashcam video; inspected the tractor trailer; and reviewed the crash report, public information on the two vehicles, pictures of the tractor trailer, and Google aerial images.[3] Doc. 34-1 at 206.

According to Powers, "[t]he dash cam video from the tractor shows the tractor maintaining its position in [Lane 2] for the duration of the video leading up to impact." Doc. 34-1 at 209.  His report notes that the solid white line separating Lanes 1 and 2 near the exit "visually tracks at the juncture of the right mirror stalk and the hood, demonstrating a relationship between the tractor and the roadway." Doc. 34-1 at 209.  According to Powers, the video "shows that the tractor was attempting to exit I-59 South to go northward on I65 using [Lane 2] of I-59 South (which transitions to the left lane of exit 124C)," and the Whites' vehicle "was in [Lane 1] of I-59 South (which transitions to the right lane of exit 124C)." Doc. 34-1 at 209. Powers noted that "[a]s the tractor was entering the exit, the Lexus attempted to pass the tractor, crossing the solid white lane divider line.  The left rear of the Lexus contacted the tractor.  The Lexus lost control and began to spin in front of the

---

[3] The Whites' car was not available for inspection by Powers. *See* Doc. 34-1 at 214.

tractor." Doc. 34-1 at 209.

Powers also used the dashcam video to "position the tractor in such a way that a straight edge (in this case, a concrete seam present at the location of the inspection) intersected the mirror and hood the same way the white fog line does in the accident footage." Doc. 34-1 at 212.  Powers' measurements revealed that every part of the tractor trailer remained inside its travel lane by at least 37 inches before the collision. Doc. 34-1 at 213.  He therefore concluded that "the physical evidence along with the video demonstrates the Pro Transport tractor involved in the accident was positioned in its lane 3 feet inside the lane divider" between the tractor trailer and the Whites' sedan. Doc. 34-1 at 214.  For this reason, he found that "the Lexus came out of [Lane 1] and contacted the Pro Transport tractor within [Lane 2]." Doc. 34-1 at 214.

### III.  DISCUSSION

The Whites' complaint alleges five claims against Collier and Pro Transport: (1) negligence; (2) wantonness; (3) negligent/wanton hiring, training, supervision, and retention; (4) negligent/wanton entrustment; and (5) negligent/wanton maintenance, operation, service, and repair. Doc. 1-1 at 7–12.  In their response to the motion for summary judgment, the Whites "agree to the dismissal of Count V and their retention and training claims." Doc. 38 at 1 n.1.  The court addresses the remaining claims below.

**A.      Negligence**

The Alabama Supreme Court defines negligence as "the failure to do what a reasonably prudent person would have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc. v. Brackin*, 356 So. 2d 119, 122 (Ala. 1978)). A plaintiff must establish four elements under a typical negligence claim: "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury." *Ford Motor Co.*, 661 So. 2d at 238 (citing *Lollar v. Poe*, 622 So. 2d 902, 905 (Ala. 1993)). "Simple negligence is the inadvertent omission of duty" and is "usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care." *Ex parte Essary*, 992 So. 2d 8, 9 (Ala. 2007) (quoting *Tolbert v. Tolbert*, 903 So. 2d 103, 114–15 (Ala. 2004) (citations and quotation marks omitted)).

Collier contends that the Whites have not established that he breached any duty owed to them.  Specifically, he argues that: (1) the Whites' testimony that he caused the accident is based on incorrect accounts and speculation (Doc. 34 at 21–25); (2) the dashcam video shows that he "never deviated from his travel lane" (Doc. 34 at 26); (3) Powers' investigation proves that he maintained his lane before the collision (Doc. 34 at 26–27); and (4) the objective evidence supports his

9

testimony that the Whites' sedan collided with his tractor trailer. Doc. 34 at 28. The court disagrees.

First, the discrepancies in the Whites' description of the accident before and after seeing the video and the differences among their accounts do not mean that the court should disregard their entire testimony at the summary judgment stage. The core of Derrick White's and Kathya White's testimony is that Collier encroached on their lane. Doc. 34-1 at 44, 51 & 232. Breanna White's testimony corroborates this account. *See* Doc. 34-1 at 101. To the extent there are any inconsistencies, discrepancies, or failures of memory, these issues go to the weight and credibility of the evidence, not to its admissibility. In this respect, much of what the defendants ask the court to do is to judge the credibility of the Whites' statements. This is a job for the jury, not the court. *See Anderson*, 477 U.S. at 255; *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.").[4]

---

[4] The differences also do not satisfy the sham affidavit rule, as the defendants argue. Doc. 34 at 20–21. The sham affidavit rule allows a court to reject an affidavit "when, without explanation, it flatly contradicts [the affiant's] own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986); *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656 (11th Cir. 1984)). This rule "only operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those which create an issue of credibility or go to the weight of the evidence." *Furcron*, 843 F.3d at 1307 (internal quotation marks and citations omitted). The court should not

Second, the court cannot find that the dashcam footage proves that Collier did not encroach into the Whites' lane of travel. The "video" footage is a series of still pictures, not a continuous stream. And at a fundamental level, the footage requires interpretation; that is why the defendants hired Powers. This is not a case where the video evidence "blatantly contradicts" the Whites' version of events, allowing the court to disregard their testimony at summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Simply put, the video requires inferences that are the province of the jury, not the court.

Finally, even considering Powers' conclusions and measurements, a reasonable juror could believe the Whites' account of the collision. Powers' measurements were based on his interpretation of the video. Crediting Powers' opinions over the Whites' memory of the collision, once again, would require the court to assume the role of the jury. Seen in this way, Powers' causation testimony emphasizes the questions of fact a jury must resolve.

In sum, there is a genuine dispute of fact as to the cause of the collision. The

---

disregard an affidavit or declaration if it "merely 'supplements earlier testimony, presents a variation of testimony or represents instances of failed memory.'" *Otwell v. Ala. Power Co.*, 944 F. Supp. 2d 1134, 1145 (N.D. Ala. 2013) (quoting *Croom v. Balkwill*, 672 F. Supp. 2d 1280, 1285 (M.D. Fla. 2009)). "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words . . . the affiant . . . was stating the truth." *Tippens*, 805 F.2d at 953–54.

motion for summary judgment is due to be denied on the negligence claim.[5]

## B.      Wantonness

Alabama statutorily defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6–11–20(b)(3).  In this way, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Cent. Bank of the South*, 646 So. 2d 601, 603 (Ala. 1994) (citations omitted).  Wantonness is not a more severe version of negligence; it is an entirely different tort concept. *Ex parte Essary*, 992 So. 2d at 9.  Although "it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff," the actor must have been "conscious that injury will likely or probably result from his actions." *Id.* (citation and internal quotation marks omitted). "Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992).

---

[5] It appears to be undisputed that Pro Transport could be liable for Collier's negligence under the doctrine of respondeat superior. *See Hendley v. Springhill Mem. Hosp.*, 575 So. 2d 547, 550 (Ala. 1990) ("To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of employer and employee—master and servant—and to establish that the act was done within the scope of the employee's employment.") (emphasis omitted).

12

The facts here do not rise to the level of wanton conduct.  The Whites point to Collier's failure to see their car approaching or to check his mirrors, arguing that this evidence "gives rise to the inference . . . that he was paying attention to something other than the traffic or distracted." Doc. 38 at 24.  Even accepting this argument, these facts do not show the required mental state to sustain a wantonness claim.  As the Alabama Supreme Court held long ago, "there can be no wanton injury without a knowledge of conditions which make the act causing it likely to result in injury and a consciousness of the danger.  It does not result from mere negligence in the failure to have that knowledge and consciousness." *Graves v. Wildsmith*, 177 So. 2d 448, 452 (Ala. 1965).  It follows that Collier's alleged failure to check his mirrors in the few seconds it took for the Whites' car to approach his tractor trailer is not wantonness.  Instead, the Whites also must demonstrate that Collier was "conscious that injury would likely or probably result from his actions." *Ex parte Essary*, 992 So. 2d at 12; *see also Mandella v. Pennington*, 73 So. 3d 1257, 1266 (Ala. Civ. App. 2011) (finding that a driver's failure to stop at a median in a divided highway because he was "attempting to beat oncoming traffic" did not constitute wantonness).  There is no evidence here of a conscious disregard of risk.  "In the final analysis, it cannot be said that this evidence establishes 'more than a showing of some form of inadvertence on the part of the driver' or that it rises to the requisite showing of 'some degree of consciousness on the part of the defendant that injuries are likely to

13

result from his act or omissions.'" *Tolbert*, 903 So. 2d at 118 (quoting *Ex parte Anderson*, 682 So. 2d 467, 469–70 (Ala. 1996)).

In sum, no reasonable juror could conclude from the evidence in the record that Collier had the conscious culpability to support a finding of wantonness. The defendants' motion for summary judgment on the wantonness claim is due to be granted.

## C.    Negligent/Wanton Hiring and Supervision and Negligent/Wanton Entrustment

The Alabama Supreme Court has explained the elements of a negligent hiring, training, retention, or supervision claim in this way:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.

*Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983)) (emphasis omitted). Similarly, to establish a negligent or wanton entrustment claim, a plaintiff must show "as one of the elements of his claim, that the defendants either knew or should have known that [the driver] was incompetent to drive." *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985). To show incompetency in the specific context of a

14

negligent or wanton entrustment claim, a plaintiff must show "that the driver to whom the defendant entrusted the vehicle was unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions, including general incompetence or habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 321–22 (Ala. 2005) (internal quotation marks, citations, and emphasis omitted); *see also Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413–14 (Ala. 2005) (summarizing Alabama caselaw holding that "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle"). Such "proof may 'be established by evidence of previous acts of negligent or reckless driving, . . . previous accidents, or previous acts of driving while intoxicated.'" *Edwards*, 926 So. 2d at 321–22 (citation omitted). Therefore, to proceed on either of these claims, the Whites must introduce evidence that would allow a reasonable juror to find that Pro Transport knew or should have known of Collier's incompetence to drive. They have not done so.

There is no evidence in the record showing Collier's habitual negligence or general incompetence to drive. Before hiring Collier in March 2024, Pro Transport confirmed that he had a valid commercial driver's license. Doc. 34-1 at 265, 274–75, 278. Pro Transport also confirmed Collier had no motor vehicle accidents during the previous three years and only one traffic citation for failure to drive in the proper lane. Doc. 34-1 at 278. After hiring Collier, Pro Transport required him to complete

15

additional training on various driving safety topics. *See* Doc. 34-1 at 281–98.

To prove Collier's incompetency, the Whites argue that he received five speeding tickets between 1997 and 2008, an open container violation in 2005, and an improper lane violation in 2023. *See* Doc. 38 at 11, 27–29.  But the law does not require a perfect driver or one with "a record completely free of mistake," *Southland Bank v. A&A Drywall Supply, Co., Inc.*, 21 So. 3d 1196, 1217 (Ala. 2008), and Collier's record does not show his incompetence to drive.  First, the speeding tickets are remote in time since the closest one was 16 years before the collision with the Whites.  Second, the driving infractions at issue—speeding and driving in a lane for vehicles with less than six wheels—bear no relationship to the collision.  And the open container violation too is insufficient to show incompetence as a matter of law, particularly when there is no allegation that intoxication played any role in the collision at issue. *See, e.g.*, *Pryor v. Brown & Root USA, Inc.,* 674 So. 2d 45, 52 (Ala. 1995) (holding that two speeding tickets and a suspended DUI charge in the 10 years before a collision do not establish incompetence); *Thompson v. Havard*, 235 So. 2d 853, 857 (Ala. 1970) (quoting *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. Civ. App. 1968), which noted that "'proof of only one previous traffic violation is grossly inadequate to establish incompetency'" for a negligent entrustment claim); *Lanham v. Gnewuch*, 2015 WL 3966480, *8–9 (N.D. Ala. Jun. 30, 2015) (holding that two previous accidents do not prove incompetence); *Askew*

*v. R&L Transfer*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (holding that two moving violations and four minor accidents do not prove incompetence).

Finally, the court rejects the Whites' argument that Collier's cellular phone use creates a question of fact about his competence to drive. Doc. 38 at 29–30. The Whites contend that "Collier's cell phone records and driver log further illustrate his incompetency and inability to follow Pro Transport's safety rules," specifically the one requiring a driver to pull off the road before placing a call. Doc. 38 at 29–30. But even if Collier did not follow Pro Transport's policy on phone use, there is no evidence that Pro Transport was on notice of his failure to follow this safety rule. Prior notice is a necessary element of the Whites' claims. *See Voyager Ins. Cos.*, 867 So. 2d at 1073; *Bruck*, 470 So. 2d at 1144.

In sum, the objective evidence Pro Transport obtained when hiring Collier revealed that he was, in fact, competent to drive, and the Whites have not created a jury issue as to whether Collier demonstrated an inability to drive a tractor trailer before the collision. This is fatal to their claims of negligent or wanton hiring or supervision and negligent or wanton entrustment. Accordingly, summary judgment is due to be granted on both of these claims.

## IV. CONCLUSION

For these reasons, the Motion for Summary Judgment (Doc. 34) is GRANTED in part and DENIED in part, and all claims in this action are

DISMISSED except for the Whites' negligence claim against Collier and Pro Transport.

DONE and ORDERED on May 18, 2026.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE